## No. 14,813.

PUTNAM DITCH COMPANY *v.* BIJOU IRRIGATION COMPANY.
(114 P. [2d] 284)

Decided May 19, 1941.   Rehearing denied June 16, 1941.

Mr. J. H. BURKHARDT, for plaintiff in error.

Mr. GEORGE A. EPPERSON, Mr. THOMAS A. NIXON, for defendant in error.

*En Banc.*

MR. JUSTICE OTTO BOCK delivered the opinion of the court.

THE Bijou Irrigation Company, defendant in error, is the owner of, and operates, the Bijou Canal, which has a carrying capacity in excess of 600 second-feet, is 45 miles in length, and serves approximately 27,000 acres of land. Up to the year 1924 it carried water under its direct appropriations of 516.32 second-feet, direct appropriations of the Bijou Irrigation District of 615 second-feet, and in addition to these it conveyed water from the Empire Reservoir, Bijou No. 2 Reservoir, and exchange water from Jackson Lake, Prewitt, Riverside, Latham and Union reservoirs, some of which reservoirs being owned by the Green City Irrigation District, which also held stock in the Bijou Irrigation Company and a right of way in the Bijou Canal. In 1924, under the direction and supervision of one J. M. Dille, a competent and able irrigationist, as superintendent of the Bijou system, defendant in error adopted a definite policy of water delivery. Where there was a sufficient supply of river water diverted under direct decrees to satisfy the daily demands of all users, water was delivered on a daily prorata or river basis. Occasionally this also was done when less than a full supply was available, by the process of sectionizing. There were and are times during irrigation seasons, especially in recent years, when there has not been a sufficient supply from the river flow to meet the demand for water from the canal on a daily prorata basis, and at such times the debit and credit or reservoir system is in effect. Under this system all of the various supplies of water which are carried by the canal are computed and the amount determined, based upon the credits given by the various reservoirs as to the rights in their present supply, the estimated amount that can be delivered on direct decrees, and from these are deducted carriage losses which are based upon past performances. The system is intended to facilitate the exchange of irrigation water, whereby all of the waters carried by the canal are made to perform the highest duty possible. At the time of the

adoption of this debit and credit system it was determined that the ditch should be divided into sections for the economical and efficient distribution and use of the water, and sectionizing was one of the component parts thereof. Based upon much study and long experience, it was determined that the most satisfactory time for the delivery of water is to allow water users in section 2 not to exceed eight days, the water users in sections 3 and 4 not to exceed eight days—that is, running to sections 3 and 4 for four days each.

Plaintiff in error, Putnam Ditch Company, is a mutual ditch and irrigation company. The original Putnam Ditch was to the north of the Bijou Canal, and had its headgate on the south bank of the South Platte River. In the year 1921 a disastrous flood came down this stream and washed out the Putnam Ditch Company's dam and headgate, and for three years thereafter the company attempted to maintain a diversion dam of brush. This method of diverting water not only was too expensive, but was very unsatisfactory. The Putnam Ditch Company was the owner of two direct appropriations of water totaling 40 second-feet, which were later in time than the direct appropriations of defendant in error. Negotiations were carried on between this company and the Bijou Irrigation Company for the purpose of changing the point of diversion from the then location of the Putnam headgate on the South Platte to that of the Bijou Canal. During these negotiations the debit and credit system in effect under the Bijou Canal system was fully discussed with, and explained to, the directors and stockholders of the Putnam Ditch Company. The culmination of these negotiations was that in the late spring of 1924 plaintiff in error arranged with defendant in error to divert its water into the Bijou Ditch for that year on a temporary basis. To this arrangement objections were made by other ditches down the river. The state engineer, however, allowed a tem-

porary transfer of twenty-five feet of Putnam water to the Bijou Canal.

After the temporary experience of 1924, the Putnam Ditch Company, February 4, 1925, filed a petition in the district court of Weld county, being case No. 6534, asking for change of the point of diversion of its water from the South Platte River to the headgate of the Bijou Canal. This petition was contested by several ditch companies not involved in the instant case. A favorable decree was entered for the Putnam Ditch, from which a writ of error was sued out in this court. *Fort Morgan Reservoir & Irrigation Co. v. Putnam Ditch Co.*, 79 Colo. 606, 247 Pac. 452. In that case the Putnam Ditch Company offered as a witness J. M. Dille, superintendent of the Bijou Canal, and, as supporting its petition, relied upon his testimony with respect to the debit and credit system and method of exchange then being used by the Bijou company under which water belonging to the Putnam Ditch Company would be carried and distributed to its stockholders. There can be no doubt, and the record clearly discloses, that the Putnam people had full and complete knowledge as to how the Bijou Canal was operated—under the debit and credit system—from 1924 and subsequently.

The instant case was brought by plaintiff in error to enjoin the Bijou Irrigation Company from operating under the methods theretofore adopted and used since 1924, in the distribution and delivery of Putnam Ditch Company water. Five causes of action are set out in the complaint: (1) That shrinkage is excessive; (2) that sectionizing is wrong and violates the decree changing the point of diversion; (3) the method of distribution is not an exact proration; (4) the accumulation of water behind checks in delivering to Putnam permits the carriage of water below the Big Cut, and that because of excessive charges for seepage Putnam water is allowed to flow down past the Big Cut.

■ Relative to the first cause of action, the trial court reduced the shrinkage that could be charged against plaintiff in error. This question was expressly left undetermined by the court decree, with an opportunity for further hearing, if that becomes necessary; consequently it is not now before us.

On the other causes the findings were against plaintiff in error. It contends that the trial court should be required to enter a decree establishing the rights of plaintiff in error to a distribution from day to day according to the needs of its shareholders, based upon the amount of water that may be diverted under its two rights. Much testimony was introduced showing how this diversion system operates. Plaintiff in error contends that the present system is vague and uncertain. This is strenuously denied by defendant in error, and in this denial it is supported by the findings of the trial court. Great importance is attached by both parties to the conditions set out in the decree changing the point of diversion, and the construction and interpretation of the latter have been discussed at length. That decree recites that the Green City Irrigation District, owning water rights in the Riverside reservoir, had, by a system of debits and credits, exchanged water with the Bijou company on its direct priorities. Then follows a recitation that the Putnam priorities and the Bijou priorities by a like system of debits and credits can be duly apportioned without injury to the vested rights of any other water users, provided that the water charged to the Putnam Ditch Company under this system of debits and credits shall not be delivered from said Bijou Canal to any lateral below what is termed the Big Cut. The trial court, in construing this proviso of the diversion decree, and the effect thereof, found as follows:

"8. The Court finds that the decree changing the point of diversion in Case No. 6534, contemplated the 'debit and credit' system and exchange as hereinbefore set forth and that said method and practice is not a viola-

tion of the limitation in said decree of delivering water 'charged' to Putnam stockholders below the Big Cut. That the said limitation in the decree was and is that no water 'charged' to the Putnam Ditch Company and its stockholders, under the 'debit and credit' system in operation under the Bijou canal, can be delivered to any water user below the Big Cut and that the said decree does not prevent the delivery of water 'charged' to the Putnam Ditch Company and its stockholders from being drawn in laterals heading below the Big Cut.

\* \* \* \* \* \* \*

"12. The Court further finds, determines and construes that the decree in Case No. 6534, changing the point of diversion of priorities Nos. 13 and 17 in Water District No. 1, to the headgate of the Bijou canal only limits the distribution of water 'charged' under Putnam priorities to delivery through headgates which lie above the Big Cut and that the same does not prohibit or deny the right to the reasonable exchange, rotation and sectionizing of water with the defendant company, but on the contrary, the said decree contemplated the distribution of the Putnam priorities under the practice of the Bijou Irrigation Company in effect at the time of the change of point of diversion, and that in order to properly construe said decree, recitals and decretal orders should be harmonized so as to include the distribution of water of the plaintiff's priorities in accordance with the 'debit and credit' system and exchange, rotation and sectionizing practiced and adopted by the plaintiff and defendant companies now and at the time of changing the point of diversion."

There never has been any claim that the Putnam Ditch Company, its stockholders or assigns, were receiving their water to irrigate lands below the Big Cut. The method of distribution, as carried on for more than fourteen years, was contemplated and thoroughly explained and understood by members of the Putnam company before they were allowed to convey water in the Bijou

Canal, and it is reasonable to assume, having in mind all of the evidence and provisions of the diversion decree, that the Bijou Irrigation Company never would have acquiesced in that decree had it not been understood that the water would be carried and distributed under the system adopted and used by the company. The record clearly discloses that a benefit was gained by the exchange of water, not only by the Bijou, but even more by the Putnam company. That there was a distinct benefit to the Putnam by its change of point of diversion from its headgate on the Platte River to that of the Bijou Canal, cannot be questioned.

There is no evidence that the distribution system as operated by defendant in error is discriminatory, nor is there any testimony that the water to which the Putnam people are entitled is not delivered. Should any of the Putnam stock become inactive—that is, if the water represented thereby is not actually in use on land or rented for a definite period, then, under the system, upon notice by the Putnam company to the Bijou company, the number of shares so deemed to be inactive are deducted from the total of the shares in the company in computing the credits to be set up. This satisfies the claim of plaintiff in error that in a mutual ditch company the other owners are entitled to the water not used by the component shareholders.

■■ After the diversion decree of 1925, a number of conferences took place between the Putnam company directors and the representatives of defendant in error, in which it was sought to reduce to writing all of the terms and conditions under which the water of the Putnam would be carried by, and distributed through, the Bijou Canal. These negotiations have been carried on for a number of years, but so far have been unsuccessful in accomplishing the object sought. Counsel for plaintiff in error insists that because of that situation there is no contractual relation in existence between the parties, and that the Putnam is entitled to obtain its

water adjudicated by the decree of 1925, independent of the rules and regulations of the Bijou Canal. It is not controverted that the water of plaintiff in error has been carried under the debit and credit system, supplemented by sectionizing, during this long period. In fact, the minutes of the meetings of the stockholders of the Putnam Ditch Company show that in 1934, when this matter was being discussed at their annual meeting, they decided to "let the regulations prevail that now exist." The diversion decree of 1925, sought and obtained at the behest of the Putnam Ditch Company, and based primarily upon the testimony of Dille, fortifies the contention of the Bijou Irrigation Company that there is an implied agreement on its part to carry the Putnam water, under the system in vogue for fourteen years, and in accordance with reasonable rules and regulations, so long as the vested rights of the stockholders of the Putnam are not jeopardized. Counsel for plaintiff in error admits that there is an implied contract between the parties for the carriage of water at a reasonable charge, and that deductions should be made for actual loss occasioned by seepage and evaporation. Those, however, are not all of the elements involved in the implied contract. As a water carrier, the Bijou Irrigation Company is a public utility, and as such there also is the implication that its system of carriage and distribution shall be operated under reasonable rules and regulations. This was indicated by the remarks of the court at the conclusion of the evidence in the hearing below, as follows: "In other words, during all these years we have been under an implied contract, implied only to the extent that the defendants should distribute this water in a reasonable manner. I cannot by the acts that have been shown here lay my finger upon any particular contract, and couldn't from the evidence here specify what the contract to be implied is, other than use of debits and credits. So it leaves it, then, a contract to deliver water in a reasonable manner. Then we

have to go to the whole setup and see whether it is reasonable. Plaintiff's complaint here is not that I should make a contract for it, but a question solely of whether the manner in which the water is delivered is reasonable or unreasonable. In that respect the plaintiff has not been able to show that the past operations have been unreasonable under the circumstances. So it has failed to prove its case in that respect."

In our opinion, the court correctly stated the issues and reached the proper conclusions based thereon. Perhaps the parties still can agree on a written contract. Nothing we here say militates against such a step. We are not impressed with the contention of defendant in error on the question of laches. By virtue of the decree, it must continue to serve the Putnam Ditch Company under reasonable rules and regulations. What is reasonable under the circumstances disclosed in the record has been judicially determined by the findings and decree entered by the trial court. When substantial changes occur in these circumstances, judicial relief, if necessary, may be accorded. The vested rights of the stockholders of the Putnam Ditch Company have been protected. The system of proration, debit and credit exchange, and sectionizing have been found to be reasonable, and we approve that finding.

The trial court's findings, order and decree are fully supported by the evidence.

The judgment is affirmed.

Mr. Justice Young and Mr. Justice Hilliard not participating.